**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20530<br><br>        Plaintiff,<br><br>    v.<br><br>$2,400,000 in funds on deposit at the U.S.<br>Treasury, Account No. ****8183,<br><br><br><br>        Defendant. | Civil Action No. 26-cv-807-JMC |

**VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT**
**IN PROPERTY SUBJECT TO FORFEITURE *IN REM***

The Estates of Naama and Eitam Henkin, along with Matan Henkin, I.Z.H. (a minor), N.E.H. (a minor), and N.Y.H. (a minor) (collectively, the "Henkin Claimants") are judgment creditors of the Islamic Republic of Iran ("Iran") and several of Iran's agencies and instrumentalities. The Henkin Claimants' allegations stemmed from the attempted-kidnapping-turned-murders, by Hamas terrorists, of Eitam and Naama Henkin in front of their four minor children in Israel in 2015, for which Iran has been found responsible. The United States District Court for the District of Columbia, following default proceedings and evidentiary submissions pursuant to 28 U.S.C. § 1608(e), entered final judgment establishing Iran's liability and awarding damages to the Henkin Claimants. The Henkin Claimants hold a final, enforceable judgment under the FSIA terrorism exception, including 28 U.S.C. § 1605A, and applicable foreign law causes of

1

action against Iran for damages arising from Iran's material support for the terrorist attack.[1]

Counsel for the Henkin Claimants learned of this forfeiture proceeding and the allegations the United States set forth in *United States v. $2,400,000 in Funds on Deposit at the U.S. Treasury*, Civil Action No. 26-cv-807 (D.D.C.). The complaint alleges that Iran has used a global network of companies and intermediaries led by Mohammad Hossein Shamkhani (the "Shamkhani Network") to evade U.S. sanctions by facilitating the international sale and shipment of Iranian petroleum products. Among other allegations, the complaint details how the Shamkhani Network used front companies, shipping firms, and financial intermediaries to conduct large-scale transactions involving Iranian-origin oil while concealing the role of Iranian persons and entities in those transactions. The Shamkhani Network's activities enabled Iran to continue exporting petroleum products and generating revenue abroad despite U.S. sanctions, allowing the Iranian regime and its affiliated entities to obtain funds that support its government and terrorist organizations. Thus, the Shamkhani Network—the global oil distribution network at the center of this forfeiture action—is an agency or instrumentality of Iran within the meaning of Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). Pub. L. No. 107-297, 116 Stat. 2322, codified at 28 U.S.C. § 1610 note.

The United States is in possession of approximately $2,400,000 in funds on deposit at the U.S. Treasury (the "Defendant Property") that were seized in connection with transactions conducted by the Shamkhani Network. TRIA expressly authorizes the Henkin Claimants to attach and execute on blocked assets of Iran or its agencies or instrumentalities, including the Shamkhani

---

[1] Iran has not paid any portion of any of the Henkins' judgment. The Henkin Claimants have received partial distributions through the United States Victims of State Sponsored Terrorism Fund, but their judgment remains substantially unsatisfied. The Henkins' judgment continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

2

Network, "notwithstanding any other provision of law." Accordingly, Henkin Claimants assert, pursuant to TRIA, a superior interest in the Defendant Property, or at least enough to satisfy their outstanding compensatory damages, plus post-judgment interest. The Henkin Claimants' right to execute on the Defendant Property at issue is statutorily superior to any interest the government or any other non-TRIA claimant might assert.

The Henkin Claimants submit this Verified Claim pursuant to Rule G(5)(a) to enforce their respective compensatory damages judgments against the Defendant Property.

## I.     The Henkin Claimants Have a Judgment Against a Terrorist Party for an Act of Terrorism

1.     In *Estate of Eitam Henkin et al. v. Islamic Republic of Iran et al.*, No. 1:19-cv-1184 (D.D.C.), the United States District Court for the District of Columbia entered a final and enforceable judgment on June 18, 2024, in the amount of $52,049,000 in compensatory damages and $179,048,560 in punitive damages ("Henkin Judgment"). The Henkin Judgment is attached as Exhibit A. A list identifying each Henkin judgment creditor and their corresponding plaintiff-specific damages award is attached as Exhibit B.

## II.     Iran is a Terrorist Party.

2.     Since 1984, Iran has been designated by the United States as a State Sponsor of Terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, previously codified at 50 U.S.C. § 4605(j), Section 620A of the Foreign Assistance Act, 22 U.S.C. § 2371, and Section 40(d) of the Arms Export Control Act, 22 U.S.C. § 2780(d). Accordingly, the government of Iran, its political subdivisions, and its agencies and instrumentalities are terrorist parties within the meaning of TRIA.

## III.     The Shamkhani Network is an Agency or Instrumentality of Iran.

3.     The allegations in the United States' verified complaint filed in *United States v.*

*$2,400,000 in Funds on Deposit at the U.S. Treasury*, Civil Action No. 26-cv-807 (D.D.C.), describes the relationship between the Shamkhani Network and the Islamic Republic of Iran. The complaint further alleges that SEA LEAD and its affiliate SEA LEAD INDIA operate as companies within the Shamkhani Network used to conduct seemingly legitimate shipping and petroleum transactions while concealing the network's connections to Iranian-origin oil and Iranian state actors. The Shamkhani Network is an agency or instrumentality of Iran because its core functions primarily consist of facilitating the international sale and shipment of Iranian petroleum products and generating revenue for Iranian state entities, activities that constitute the commercial distribution of Iranian state-owned petroleum products. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151–53 (D.C. Cir. 1994).

4.      The allegations in the government's forfeiture complaint demonstrate that the core functions of the Shamkhani Network were to facilitate and monetize the export of Iranian petroleum on behalf of Iran's state-controlled oil sector. The network used a coordinated system of front companies, shipping firms, and financial intermediaries to sell and transport Iranian petroleum products through international markets despite U.S. sanctions. Because Iran's petroleum resources are owned and controlled by the Iranian government and administered through the Ministry of Petroleum and its subsidiaries, including the National Iranian Oil Company ("NIOC"), the Shamkhani Network operated as a mechanism through which Iran carried out the export and monetization of its state-owned petroleum resources.

5.      The broader structure of Iran's petroleum sector confirms this relationship. Iran's petroleum sector is administered by the Ministry of Petroleum and its subsidiaries, including NIOC, which is responsible for the exploration, production, refining, and export of Iranian oil and petroleum products. NIOC has been identified by the United States government as an entity that

4

materially supports the Islamic Revolutionary Guard Corps ("IRGC"), including the IRGC-Qods Force ("IRGC-QF"), which the United States has designated as a terrorist organization. Revenues generated from the export and distribution of Iranian petroleum products therefore serve as a significant funding source for the IRGC-QF and its terrorist proxies abroad.

6.      Accordingly, the Shamkhani Network is an agency or instrumentality of Iran within the meaning of Section 201(a) of the Terrorism Risk Insurance Act.

## IV.    The Defendant Property Are Blocked Assets of Iran or Its Agencies or Instrumentalities.

7.      The Defendant Property are blocked assets of a terrorist party within the meaning of TRIA. Under TRIA, "[b]locked assets" include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A).

8.      The United States government through IEEPA has "blocked" Iranian property in the United States, including property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 560.211, 594.201(a)(5). Property that is blocked pursuant to IEEPA qualifies as a "blocked asset" for purposes of TRIA and may be attached by judgment creditors holding terrorism judgments against Iran. *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 636–37 (D.C. Cir. 2025).

9.      The Defendant Property was seized by the United States after being transferred through U.S. financial institutions in connection with transactions conducted by the Shamkhani Network to sell and ship Iranian petroleum products in violation of U.S. sanctions. Because those funds were seized by the United States pursuant to sanctions enforcement authorities and are traceable to agencies or instrumentalities of Iran, they constitute blocked assets within the meaning of the TRIA.

## V.    The United States Commenced Civil Forfeiture Proceedings Against the Defendant Property.

10.     On March 6, 2026, the United States filed a civil forfeiture complaint in the United

States District Court for the District of Columbia against funds totaling approximately $2,400,000. *See United States v. $2,400,000 in Funds on Deposit at the U.S. Treasury*, Civil Action No. 26-cv-807 (D.D.C.), ECF No. 1.

11.    In this case, the United States seeks forfeiture of the Defendant Property pursuant to 18 U.S.C. § 981(a)(1), alleging that the funds were involved in or traceable to transactions conducted by a global oil distribution network led by Mohammad Hossein Shamkhani in violation of U.S. sanctions laws.

## VI.    Under TRIA, the Henkin Claimants Have a Superior Interest in the Defendant Property.

12.    At the claim stage of a civil forfeiture proceeding, a claimant is not required to prove the merits of its interest in the property. Rather, the claimant need only demonstrate a "facially colorable interest" sufficient to establish standing. *United States v. All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d 81, 95 (D.D.C. 2013). Whether the claimant ultimately proves that interest is a merits question to be decided later, not at the standing stage. *Id.* The Henkin Claimants easily meet this burden.

13.    The Henkin Claimants are judgment creditors of Iran as a result of Iran's acts of state-sponsored terrorism. Because the Shamkhani Network was an agent or instrumentality of Iran, as set forth above, TRIA entitles the Henkin Claimants to execute on the Defendant Property to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a). Accordingly, the Henkin Claimants have a possessory interest in the Defendant Property, which permits them to bring the claims asserted here.

14.    Specifically, TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" arising out of an "act of terrorism" may execute on the "blocked assets" of that terrorist party or "any agency or instrumentality" "to satisfy

6

such judgment to the extent of any compensatory damages." TRIA, Section 201(a). TRIA's "notwithstanding" clause "signals that the TRIA prevails over conflicting provisions of law." *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 433 (D.C. Cir. 2023) (citation omitted). Accordingly, because it expressly overrides "conflict[ing] laws," TRIA's notwithstanding clause necessarily overrides "the civil-forfeiture statute." *Levin*, 156 F.4th 632, 643 n.1.

15.     The Henkin Claimants satisfy each element required for TRIA execution rights. First, the Henkin Claimants hold judgments pursuant to 28 U.S.C. § 1605A for compensatory damages against Iran based on an act of terrorism. *See supra* ¶ 1. Second, Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism under the Export Administration Act of 1979. *See supra* ¶ 2. Third, the Shamkhani Network constitutes an agency or instrumentality of Iran by serving as a mechanism through which Iranian petroleum products were sold and transported internationally in violation of U.S. sanctions, thereby generating revenue and influence for Iranian state entities, including the NIOC, the IRGC, and the IRGC-QF. *See supra* ¶¶ 3-6. Fourth, the Defendant Property are "[b]locked assets" within the meaning of TRIA. *See supra* ¶¶ 7-9.

16.     Pursuant to 28 U.S.C. § 983(a) and Rule G, the Henkin Claimants hereby assert a claim against such amount of the Defendant Property—as the property of an agency or instrumentality of Iran—as may be necessary to satisfy the outstanding compensatory damages owed to them under their judgment against Iran, plus post-judgment interest.

17.     The Henkin Claimants' claim is superior to the government's claim and superior to any other non-TRIA claimant.

18.     This claim is verified under penalty of perjury by the attached verifications from the Henkin Claimants (or legal guardians *ad litem* or estate personal representatives, as applicable).

19.     Notwithstanding the government's forfeiture efforts, the Henkin Claimants reserve all rights and remedies available in law and equity to enforce their interest in the Defendant Property.

Dated: April 8, 2026                                    Respectfully submitted,

                                                           /s/ *Kevin L. Attridge*
                                                 Kevin L. Attridge (D.C. Bar No. 1012349)
STEIN MITCHELL BEATO & MISSNER LLP
2000 K Street, N.W., Suite 600
Washington, D.C. 20006
Tel: (202) 737-7777
Fax: (202) 296-8312
kattridge@steinmitchell.com

Gavriel Mairone (D.C. Bar No. 156461)
MM~LAW LLC
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
ctlaw@mm-law.com

*Counsel for the Henkin Claimants*

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, I electronically filed the foregoing Henkin Claimants' Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture In Rem via CM/ECF for the United States District Court for the District of Columbia and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the Government, in the above-captioned matter.

/s/ *Kevin L. Attridge*
Kevin L. Attridge