UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>$2,400,000 IN FUNDS ON DEPOSIT AT THE U.S. TREASURY, ACCOUNT NUMBER 8183<br>Defendant *In Rem*. | Civ. No. 26-807 (JMC) |

**GOVERNMENT'S MOTION TO STRIKE UNSECURED JUDGMENT CREDITORS AND MOTION FOR DEFAULT JUDGMENT**

The United States of America moves to strike the claims of the Estates of Naama and Eitam Henkin, along with Matan Henkin, I.Z.H. (a minor), N.E.H. (a minor), and N.Y.H. (a minor) (collectively, the "Henkin Claimants"); Eslyn Joseph Hernandez, Sr., Eslyn Joseph Hernandez, Jr., and Stephanie Hernandez (collectively, the "Hernandez Claimants"); and victims of acts of state-sponsored terrorism perpetrated by the Islamic Republic of Iran (the "Iranian Terrorism Victims") (together the "Potential Claimants") for lack of standing pursuant to Supplemental Rule G(8)(c)(i)(B). *See* ECF Nos. 6, 7, 15. Should this Court grant the government's Motion to Strike, then the Court should also grant the government's Motion for a Default Judgment, as there will be no claimants remaining in this action because the time for additional claims has passed.

## I. PROCEDURAL HISTORY AND STATEMENT OF FACTS

On March 6, 2026, the United States filed a Verified Complaint for Forfeiture *In Rem* of $2,400,000 on deposit with the U.S. Treasury in New York (the "Defendant Property"). In that complaint, the United States alleged that the Defendant Property is subject to forfeiture pursuant to: (1) 18 U.S.C. § 981(a)(1)(A) because it is property that was involved in, and/or is traceable to

property that was involved in a violation of the international money laundering statute, 18 U.S.C. § 1956(a)(2)(A), that occurred when Sea Lead Shipping Pte, Ltd., its affiliate entity, Sea Lead Shipping Agency India PV (together "Sea Lead Shipping"), and others caused a U.S. financial institution to facilitate the payment of U.S. dollars for the benefit of sanctioned individuals (namely, Hossein Shamkhani) and entities of the Islamic Republic of Iran ("Iran"), with the intent to promote a specified unlawful activity, that is, a violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705; and (2) 18 U.S.C. § 981(a)(1)(G)(i), as assets affording a person a source of influence over an individual, entity, or organization engaged in planning or perpetrating any federal crime of terrorism (as defined in section 18 U.S.C. § 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, that is, National Iranian Oil Company ("NIOC") and the Islamic Revolutionary Guard Corps ("IRGC"), including the IRGC Quds Force ("IRGC-QF"). Compl. ¶ 74–83, ECF No. 1.

The Defendant Property consists of two attempted wire transfers from late January and early February 2026. *Id.* at ¶ 7–8. The money was seized pursuant to two seizure warrants issued in February 2026. *Id.* at ¶ 10. After seizure, the money was transferred to the Treasury Account where it is presently held. *Id.* The forfeiture arose "out of an investigation of an illicit Iranian oil distribution network led by Mohammad Hossein Shamkhani for sanctions violations, money laundering, and related federal offenses." *Id.* at ¶ 1. Specifically, the United States had been investigating "Shamkhani's distribution and sale of petroleum products and other commodities using a network of individuals, front companies, shipping companies, and financial institutions, including [Sea Lead Shipping]." *Id.* Through the Complaint, the United States sought "to forfeit the Defendant Property, the transfer of which was intended to promote ongoing violations of U.S. sanctions laws, and which affords [Shamkhani and Sea Lead Shipping] a source of influence over

entities that have engaged in federal crimes of terrorism, including the [NIOC, IRGC, and IRGC-QF]." *Id.*

In accordance with Supplemental Rule G(4), the United States provided direct notice of this case to certain parties with a potential interest in the property and online publication notice on an official government website. Specifically, on March 27, 2026, counsel for the United States provided counsel for Sea Lead Shipping and its related entities with Notice of the Civil Forfeiture Action. Declaration of AUSA Adam Barry ¶ 3 (Sept. 17, 2026) ("Barry Decl.") (filed herewith). On April 9, 2026, counsel for the United States provided counsel for several banks involved in the correspondent banking transactions with Notice of the Civil Forfeiture Action. *Id.* at ¶ 4. Consistent with Supplemental Rule G(4)(b)(ii), the direct notice stated that claimants needed to file claims within 35 days of the direct notice and needed to file Answers no later than 21 days thereafter. *Id.* at ¶ 5.

Beginning on April 10, 2026, the United States posted the Notice of Civil Forfeiture on an official government internet site for at least 30 consecutive days. Declaration of Publication, ECF No. 9-1 ("Publication Decl."). On May 11, 2025, the United States filed a Declaration of Publication with that Notice of Forfeiture Action. ECF No. 9. Consistent with Rule G(5)(a)(ii)(B), the publication notice stated that claims were due 60 days from the date of first publication (June 9, 2026) and Answers were due 21 days thereafter. ECF No. 9. The direct notices and publication notice also explained the remission process and how aggrieved individuals could file remission or mitigation petitions. Barry Decl. ¶ 9, Publication Decl. Attachment 1.

The only party receiving direct notice that entered an appearance in this matter is Sea Lead Shipping Pte Ltd (and its related entity Sea Lead Shipping Agency India Private Limited). On May 22, 2026, Attorney Michael Baratz entered an appearance for both Sea Lead entities. ECF No. 10.

On July 21, 2026, Attorney Baratz filed a motion to withdraw his appearance, noting that "Sea Lead has not filed a claim in this proceeding and will not do so." ECF No. 19. The Court granted Attorney Baratz's motion to withdraw on July 22, 2026. Sea Lead Shipping was not designated at the time of the seizure of funds or filing of the Complaint but was later designated by the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC") for being owned or controlled by Shamkhani on July 14, 2026.[1] Sea Lead Shipping did not file a claim for the Defendant Property on or before July 28, 2026.

Separately, three groups of Potential Claimants have filed claims, answers, or motions to intervene purporting to assert claims to the defendant property.

On April 8, 2026, the Henkin Claimants filed a claim and statement of interest as judgment creditors of the Islamic Republic of Iran and several of Iran's agencies and instrumentalities. ECF No. 6. On April 29, 2026, the Henkin Claimants filed an answer. ECF No. 8. On September 2, 2026, the Henkin Claimants filed a motion to amend and assert a cross claim. ECF No. 23.

On April 28, 2026, the Hernandez Claimants filed a *pro se* motion to intervene and notice of claim. ECF No. 7.

On June 9, 2026 the Iranian Terrorism Victims filed a Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem*. ECF No. 15. On June 30, 2026, the Iranian Terrorism Victims filed an Answer and Crossclaim. ECF No. 18.

## II. ARGUMENT

The claims filed in this matter must be struck. Each of the Potential Claimants lack standing to assert a claim because they are general unsecured creditors without a lien or other secured

---

[1] Press Release, U.S. DEPARTMENT OF THE TREASURY, *Treasury Intensifies Pressure on Shamkhani's Expansive Illicit Shipping Empire* (July 14, 2026), *available at*: https://home.treasury.gov/news/press-releases/sb0562

interest in the Defendant Property. Furthermore, the Hernandez Claimants' *pro se* motion to intervene must be denied because the *pro se* Hernandez Claimants did not file a proper claim under the rules. Finally, should this Court grant the government's motion to strike, no claimants will remain, and this Court should grant a default judgment in favor of the government.

### A. The Potential Claimants Are General Unsecured Creditors Without Standing to Assert a Claim to the Defendant Property.

The Potential Claimants each allege that they hold an unsecured money judgment against Iran. None of the Claims (or other filings) allege any lien or other secured interest in the Defendant Property. Rather, the face of the claims makes clear that the Potential Claimants are general unsecured judgment creditors of Iran who wish to use the Defendant Property to partially satisfy their judgments. As general unsecured judgment creditors against Iran, the Potential Claimants lack standing to make a claim in a forfeiture case.

The law is clear: unsecured creditors do not have standing to make a claim in a forfeiture case. Multiple courts have recognized this fundamental principle. "In order to contest the forfeiture of property to the federal government in an *in rem* forfeiture proceeding, a claimant must 'assert[] an interest' in 'specific property' that is named as a defendant." *United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 116 (D.D.C. 2015) (quoting Supp. R. G(5)(a)(i)(A)). "Establishing standing requires only that the claimant demonstrate 'a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake.'" *United States v. All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d 81, 95 (D.D.C. 2013). "A claimant who lacks such an interest has no standing to challenge the forfeiture." *Id.* (citing Supp. R. G(8)(c)(i)(B)). "Federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." *Id.* (quoting *United States v. One–Sixth Share*, 326 F.3d 36, 41 (1st Cir. 2003)); *accord*

*United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) ("a general creditor can never have an interest in specific forfeited property."). Consistent with the prior caselaw, the Civil Asset Forfeiture Reform Act of 2000, which is the applicable federal civil forfeiture statute, specifically disqualifies general unsecured creditors as not having an ownership interest to the defendant property and therefore such creditors cannot assert an innocent owner defense to a claim for forfeiture. *See* 18 U.S.C. § 983(d)(6)(B)(i). The Potential Claimants have no interest in this specific property; they have a general damages judgment against Iran. Thus, the Potential Claimants cannot establish standing.

A recent analogous case from this Court supports striking these claims. In *United States v. Fifty-Three Virtual Currency Accounts*, the government filed an *in rem* forfeiture claim against several properties, including virtual currency accounts, alleged to be connected through various criminal acts to the terrorist group Hamas. No. 20-2227, 2025 WL 2732705 at *1 (D.D.C. Sept. 25, 2025); *see also United States v. Fifty-Three Virtual Currency Accounts*, No. CV 20-2227 (RC), 2026 WL 2690073, at *7 (D.D.C. Sept. 14, 2026) (denying motion for reconsideration). Family members of Yitzchak Weinstock (the "Weinstock Claimants"), a U.S. citizen killed in a 1993 terrorist shooting perpetrated by Hamas's militant wing, the Al-Qassam Brigades, filed a claim against the property. *Id.* The Weinstock Claimants had obtained a final judgment against Hamas for more than $78 million from a Florida court in 2019. The Court initially, in November 2024, held that the Weinstock Claimants had no interest in the defendant properties. *Id.* at *2. The government amended its complaint on an unrelated matter, and the Weinstock Claimants filed an answer and a motion for summary judgment in their favor. The government renewed its motion to strike the Weinstock Claimants' claim. *Id.*

The Court granted the government's motion to strike the Weinstock Claimants' claim because "the Weinstock Claimants do not have standing in this action because they do not have any interest in the Defendant Properties." *Id.* at *3–4. The Court explained that the Weinstock Claimants' asserted right to the property, based on an unsatisfied judgment and without a lien on the defendant in rem "amounts only to a general unsecured interest, not a specific ownership or lien against the Defendant Properties." *Id.* at *4 (citing *8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2008) ("The generalized legal interest movants may have in the assets of [the defendant properties] does not equate to the necessary particularized interest in any specific asset of [the defendant properties] required for standing.")).

Contrary to the assertion of the Potential Claimants, the Terrorism Risk Insurance Act ("TRIA") does not confer standing on unsecured creditors such as the Potential Claimants. *Fifty-Three Virtual Currency Accts.*, 2025 WL 2732705, at *5; *Levin v. Miller*, No. 21-cv-1116, 2022 WL 17574574 at *2 (2d Cir. Dec. 12, 2022) (holding that TRIA does not confer statutory standing on its own, and that creditors lacked standing to contest forfeiture without a perfected interest in the property, such as a TRIA turnover order).

The government is aware of the recent decision in *United States v. All Petroleum-Prod. Cargo Aboard Achilleas with Int'l Mar. Org. No. 9398072*, No. CV 21-0305 (PLF), 2026 WL 2618380, (D.D.C. Sept. 4, 2026), finding that claimants to the proceeds of the sale of oil owned by Iranian terrorist organizations had standing to file a claim in that matter. It is the government's position that *Achilleas*, which is not binding precedent, is not persuasive because it is contrary to other decisions in this court that follow the bedrock principle that unsecured creditors do not have standing to make a claim. *See United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 118 (D.D.C. 2015) (PLF) (finding that holders of a

judgment against Iran's Ministry of Information and Security were general unsecured creditors of Iran who did not "possess a perfected security interest in the defendant property," and therefore lacked "Article III standing to assert a claim to the funds in this case"); *Fifty-Three Virtual Currency Accounts*, 2025 WL 2732705 at *1; *All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d at 95.

Even if the Defendant Property is, as the Potential Claimants assert, a "blocked asset" under TRIA due to Sea Lead Shipping's later designation by OFAC, TRIA does not itself create property rights in the blocked assets of terrorist parties, it only removes possible barriers to judicial process that may, eventually, result in entitlement to property. *See Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143, 147 (2d Cir. 2018) ("Absent a federal definition of property in either FSIA [Foreign Sovereign Immunities Act] or TRIA, we apply the general rule in this Circuit that when Congress has not created any new property rights, but merely attaches consequences, federally defined, to rights created under state law, we must look to state law to define the rights the judgment debtor has in the property the creditor seeks to reach." (citations and internal quotation marks omitted)); *see also United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) (observing fact that state law determined nature of taxpayer's legal interest in an asset "follows from the fact that the federal statute creates no property rights but merely attaches consequences, federally defined, to rights created under state law") (internal quotation marks omitted); *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 96-97 (2d Cir. 2022) ("TRIA itself, however, provides no procedures for enforcement. In seeking attachment or execution, therefore, a judgment holder must follow the procedures of state law and, to the extent it applies, federal law."); *Hausler v. Republic of Cuba v. Comcast IP Phone II*, No. 1:09cv20942, 2010 WL 11442514, at *5 (S.D. Fla. Oct. 14, 2010) ("The TRIA provides a judgment plaintiff with the opportunity to execute on

'blocked assets,' but does not provide the means or procedures for actually executing upon those assets.").

Likewise, a civil judgment, such as those held by the Potential Claimants, does not automatically create property rights in the judgment debtor's property; rather, those property rights are created through further judicial or other processes, such as recording a judgment and following execution procedures. To enforce their judgment in the District of Columbia, the Potential Claimants may seek attachment as provided in the District of Columbia Code. *See* FED. R. CIV. P. 69(a)(1); D.C. Code, Title 16; *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 430 (D.C. Cir. 2023).

It is undisputed that the Potential Claimants have not obtained writs of attachment or other secured interests in the Defendant Property. Accordingly, they have no specific legal right or claim against the Defendant Property and therefore lack standing to assert a claim, regardless of TRIA. As in *Weinstock*, the Potential Claimants in this matter assert only a general unsecured interest in the Defendant Property, which is insufficient to establish standing.[2] Accordingly, this Court should strike their claims.

### B. The Hernandez Claimants *Pro Se* Motion to Intervene Must be Denied

As a separate matter, the *pro se* motion filed by the Hernandez Claimants must be denied. The Hernandez Claimants filed a joint *pro se* motion to intervene and notice of claim. This is not the proper procedure for filing a claim in a forfeiture matter. A potential claimant contesting the

---

[2] This Court may also consider that the Potential Claimants will be unable to establish an interest in the Defendant Property on the merits due to federal sovereign immunity and the inability to meet the elements of the innocent owner defense. As in *Achilleas,* where the claimants obtained writs of attachment against the defendant property that were later quashed on foreign sovereign immunity grounds, federal sovereign immunity will bar recovery in this case. *Achilleas*, 2026 WL 2618380 at *2. Similarly, insofar as the Potential Claimants have not attached the Defendant Property, they will not be able to show they are innocent owners, as any attachment will not predate the criminal activity and any interest acquired after the filing of the Complaint in this is done with the knowledge of the government's interest and the involvement of the Defendant Property in the alleged criminal activity. *See* 18 U.S.C. § 983(d).

forfeiture of property named as a defendant in a civil forfeiture action must proceed in the manner set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* 18 U.S.C. § 983(a). Rule G(5)(a), which sets forth the requirements for potential claims, does not contemplate motions to intervene as a plaintiff. Furthermore, Rule G(5)(b) provides that "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." The Hernandez Claimants have filed neither an answer nor a motion under Rule 12. Even if the Hernandez Claimants' motion to intervene was construed as a complaint or answer, their claims would be treated the same as the remaining Potential Claimants' claims and should be denied for the reasons set forth below.

### C. Should This Court Strike the Potential Claimants, Then This Court Should Enter Default Judgment.

In the event this Court grants the relief requested to strike the Potential Claimants, there will be no claimants remaining in the action. As noted above, counsel for Sea Lead, the only other potential claimant in the matter, represented to the Court that Sea Lead did not intend to file a claim and the extended deadline for Sea Lead has expired. Because no valid claimants have filed a claim or answer, the Court has the discretion to enter default judgment to avoid further delay and uncertainty. *See U.S. v. All Assets Held at Bank Julius Baer & Co.*, 743 F. Supp.3d 204, 218 (D.D.C. 2024); *accord United States v. Batato*, 833 F.3d 413, 427 (4th Cir. 2016) , *cert. denied*, 583 U.S. 816 (2017). This relief is particularly appropriate here, because the government provided reasonable bases to support forfeiture in a public filing, provided adequate notice of the action, including direct notice and publication, and the stakeholder implicated in the action has engaged the government in discussions regarding its interests and elected not to file a claim. *Id.*

## III. CONCLUSION

For the reasons stated herein, the United States respectfully requests that this Court deny the Hernandez Claimants' *pro se* motion to intervene, strike the claims of each of the Potential Claimants and issue a Default Judgment in favor or the United States.

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Adam Barry*
Adam Barry
Assistant United States Attorney
Cal. Bar Number 294449
Email: adam.barry@usdoj.gov
Telephone: 202-252-7793
Jafer Aftab
Assistant United States Attorney
N.J. Bar No. 050341997
Email: Jafer.Aftab@usdoj.gov
Telephone: (202) 252-6714

United States Attorney's Office
National Security Section
601 D St. NW
Washington, D.C. 20530

MARGARET A MOESER
Chief, Money Laundering, Narcotics, and Forfeiture Section

*/s/ Peter Nothstein*
Peter M. Nothstein
Senior Trial Attorney
D.C. Bar Number 498178
Email: peter.nothstein@usdoj.gov
Telephone: 202-353-2037

Katlin K. O'Brien
Trial Attorney
D.C. Bar No: 241635
Email: katlin.obrien@usdoj.gov
Telephone: 202-514-0858

U.S. Department of Justice, Criminal Division,
Money Laundering, Narcotics, and Forfeiture Section, Bank Integrity Unit
1400 New York Avenue NW
Washington, D.C. 20530

CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and Export Control Section

*/s/ Sein Heiden*
Sean Heiden
Acting Deputy Chief
D.C. Bar Number 1617636
Email: sean.heiden2@usdoj.gov
Telephone: 202-514-8106
U.S. Department of Justice
National Security Division

Counterintelligence and Export Control
Section
975 Pennsylvania Ave NW
Washington, D.C. 20530

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify, on this 17th day of September, 2026, that a copy of the foregoing was served via U.S. mail on the following *pro se* individuals:

Eslyn Joseph Hernandez, Jr.
174 Chestnut Street, Apt. 1
Albany, New York 12210

Eslyn Hernandez, Sr.
167 Foggintown Rd
Brewster, New York 10509

Stephanie Hernandez
167 Foggintown Rd
Brewster, New York 10509

*/s/ Peter Nothstein*

Peter M. Nothstein
Senior Trial Attorney
D.C. Bar Number 498178
Email: peter.nothstein@usdoj.gov
Telephone: 202-353-2037
U.S. Department of Justice, Criminal Division,
Money Laundering, Narcotics, and Forfeiture
Section, Bank Integrity Unit
1400 New York Avenue NW
Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

$2,400,000 IN FUNDS ON DEPOSIT AT THE U.S. TREASURY, ACCOUNT NUMBER 8183

Defendant *In Rem*.

Civ. No. 26-807 (JMC)

I, Adam Barry, state the following:

1. I am an Assistant United States Attorney for the United States Attorney's Office for the District of Columbia.

2. I submit this Declaration in support of the United States' Motion to strike the claims of the Estates of Naama and Eitam Henkin, along with Matan Henkin, I.Z.H. (a minor), N.E.H. (a minor), and N.Y.H. (a minor) (collectively, the "Henkin Claimants"); Eslyn Joseph Hernandez, Sr., Eslyn Joseph Hernandez, Jr., and Stephanie Hernandez (collectively, the "Hernandez Claimants"); and victims of acts of state-sponsored terrorism perpetrated by the Islamic Republic of Iran (the "Iranian Terrorism Victims"). (together the "Potential Claimants") for lack of standing pursuant to Supplemental Rule G(8)(c)(i)(B). *See* ECF Nos. 6, 7, 15.

3. On March 27, 2026, I provided counsel for Sea Lead Shipping and its related entities with Notice of the Civil Forfeiture Action.

4. On April 9, 2026, my colleague with the Department of Justice's Money Laundering, Narcotics, and Forfeiture Section provided counsel for several banks involved in the correspondent banking transactions with Notice of the Civil Forfeiture Action.

5. Consistent with Supplemental Rule G(4)(b)(ii), the direct notices stated that claimants needed to file claims within 35 days of the direct notice and needed to file Answers no

later than 21 days thereafter.

6. Beginning on April 10, 2026, the United States posted the Notice of Civil Forfeiture on an official government internet site for at least 30 consecutive days.

7. On May 11, 2025, the United States filed a Declaration of Publication with that Notice of Forfeiture Action. ECF No. 9.

8. Consistent with Rule G(5)(a)(ii)(B), the publication notice stated that claims were due 60 days from the date of first publication (June 9, 2026, 60 days from April 10, 2026) and Answers were due 21 days thereafter.

9. The direct notices and publication notice also explained the remission process and how aggrieved individuals could file remission petitions.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: September 17, 2026 By: /s/ Adam P. Barry